UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**CLAUDETTE RABDEAU,**

    **Plaintiff,**

    v.                                          Case No. 22-CV-674

**KILOLO KIJAKAZI,**
**Acting Commissioner of Social Security,**

    **Defendant.**

---

## DECISION AND ORDER

---

Claudette Rabdeau seeks judicial review of the final decision of the Acting Commissioner of the Social Security Administration ("SSA") denying her claim for Social Security Disability Insurance ("SSDI") and Supplemental Security Income ("SSI") benefits under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, 1381 *et seq.* (Docket # 1.) Rabdeau advances two arguments for remand: (1) ALJ Freyberg's departure from ALJ Gendreau's finding of one migraine-related absence per month was legal error and/or not supported by substantial evidence and (2) ALJ Freyberg's omission of a limitation on migraine-related absences was not supported by substantial evidence. (Pl. Br., Docket # 16.) For the reasons explained below, the Commissioner's decision is affirmed, and the case is dismissed.

## BACKGROUND

*1. Procedural History*

The history of this case dates back almost a decade. Rabdeau originally applied for disability insurance benefits and supplemental security income in 2015, alleging various back

disorders and migraines with an onset date of June 13, 2014. (Tr. 16.) Rabdeau's claims were denied initially on June 23, 2015, and upon reconsideration on April 20, 2016. (*Id.*) Rabdeau had a hearing on November 2, 2017 before Administrative Law Judge ("ALJ") Chad Gendreau (*Id.*) ALJ Gendreau issued an unfavorable decision on April 18, 2018, and the Appeals Council denied review on July 31, 2018. (*Id.* at 1, 16–26.) Rabdeau then filed a claim in this Court, and Judge J.P. Stadtmueller remanded the case for further proceedings pursuant to the parties' joint stipulation in an order dated February 26, 2019. (*Id.* at 2592.). *See Rabdeau v. Berryhill*, 18-CV-1467 (E.D. Wis.).

The Appeals Council issued a Remand Order on March 17, 2019, and a second hearing was held before ALJ Gendreau on August 15, 2019. (Tr. 1100.) ALJ Gendreau issued a partially favorable decision on December 2, 2019, finding that although Rabdeau had shown she became disabled as of May 9, 2018, she was not disabled from June 13, 2014 through May 8, 2018. (*Id.* at 1100–26.) ALJ Gendreau found that Rabdeau had the following residual functional capacity ("RFC") during the relevant time period:

> After careful consideration of the entire record, the undersigned finds that prior to May 9, 2018, the date the claimant became disabled, the claimant had the residual functional capacity (RFC) to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except she could occasionally reaching [sic] overhead to the left, and occasionally reach overhead to the right. She could handle items frequently with the left hand, and could handle items frequently with the right hand. She could frequently finger with the left hand, and frequently with the right hand. She could climb ramps and stairs no more than occasionally. She could never climb ladders, ropes, or scaffolds. She could occasionally balance, stoop, kneel, crouch, and crawl. She could never work at unprotected heights. She could occasionally work with moving mechanical parts. The claimant could be exposed to vibration no more than occasionally. She was limited to an environment of no more than moderate noise level. The claimant was limited to performing simple, routine, and repetitive tasks. She was limited to simple work related decisions. The claimant would have no more than frequent interaction with supervisors, and occasional interaction with coworkers and the public. The claimant would have been absent one time per month.

2

(*Id.* at 2609.)

Rabdeau appealed ALJ Gendreau's finding that she was not disabled from June 13, 2014 through May 8, 2018, and the Appeals Council denied the appeal on February 22, 2021. (*Id.* at 1088.) Rabdeau filed another claim in this Court, and Judge J.P. Stadtmueller again remanded the case for further proceedings pursuant to the parties' joint stipulation in an order dated August 16, 2019. (*Id.* at 2645.) *See Rabdeau v. Kijakazi*, 21-CV-476 (E.D. Wis.).

The Appeals Council issued a Remand Order on November 17, 2021, and a third hearing was held via telephone before ALJ Gary A. Freyberg on February 17, 2022. (Tr. 2512, 2651–57.) ALJ Freyberg issued an unfavorable decision on March 16, 2022, finding Rabdeau was not disabled from June 13, 2014 through May 8, 2018. (*Id.* at 2512–34.) ALJ Freyberg found that Rabdeau's migraines did not meet the severity requirements of Listing 11.02. (*Id.* at 2519.) ALJ Freyberg then analyzed the record evidence and determined that Rabdeau had the following RFC:

> From June 13, 2014, through May 8, 2018, after careful consideration of the entire record, the undersigned finds that the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she could never climb ladders, ropes, or scaffolds, as well as occasionally climb ramps and stairs, occasionally balance, occasionally stoop, occasionally crouch, occasionally kneel, and occasionally crawl. She could perform occasional bilateral overhead reaching, as well as frequent bilateral handling and fingering. She must have avoided concentrated exposure to excessive noise, that is, noise above the Selected Characteristics of Occupations (SCO) coding of 3, moderate (e.g., department store or grocery store). She must have avoided all use of dangerous moving machinery. She must have avoided all exposure to unprotected heights. She was limited to understanding, remembering and carrying out no more than simple instructions. She was limited to simple, routine tasks. She was limited to employment in a low stress job, defined as having only occasional decision making required and only occasional changes in the work setting. She was limited to work where there is no production rate or pace work such as an assembly line with no hourly production quotas; end of the day production quotas are permissible.

(*Id.* at 2521–32.) ALJ Freyberg further found that considering Rabdeau's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Rabdeau can perform. (*Id.* at 2533–34.) Rabdeau initiated this action on June 10, 2022. (Docket # 1.)

    2.    *Medical History: Migraines*

Rabdeau first reported experiencing chronic migraines and related symptoms such as seeing black dots and sensitivity to sound and light to her primary care doctor, Dr. Nebosja Stevanovic, in August 2014. (Tr. 516.) Rabdeau then saw neurologist Dr. Fallon Schloemer in December 2014, reporting that her headaches had increased to two to three times per week. (*Id.* at 691.) During the neurological examination, Dr. Schloemer noted that Rabdeau was alert, oriented, attentive, with normal concentration, memory, and speech, and with an appropriate fund of knowledge. (*Id.* at 693.) Dr. Schloemer also found that Rabdeau had no visual abnormalities and presented with intact facial sensation and hearing and no cranial/facial weakness. (*Id.*) As for motor function, Dr. Schloemer reported that Rabdeau's fine finger movements were intact, with no fix or drift, with normal muscle tone and bulk, no sign of abnormal involuntary movements, and normal muscle strength. (*Id.*) Dr. Schloemer also noted that Rabdeau's headaches were likely worsened by pain medication overuse (*id.* at 693); however, Rabdeau reported daily headaches and increased back pain when she came off all of her pain medications as recommended to alleviate her migraine symptoms (*id.* at 706).

Rabdeau received her first Botox injection for her chronic migraines in March 2015. (*Id.* at 714.) During her follow-up appointment in May 2015, Rabdeau reported that she experienced overall improvement in the severity of her headaches. (*Id.* at 721.) In June 2015,

Rabdeau reported that her headaches had significantly improved and went from daily to two per week. (*Id.* at 722.) Dr. Schloemer noted that Rabdeau continued to have "only 2 mild headaches a week that are short lived and do not require acute therapy" and that Rabdeau was "very happy" with the treatment plan. (*Id.* at 839.) Dr. Schloemer noted Rabdeau's continued improvement during her next three appointments in December 2015, March 2016, and May 2016. (*Id.* at 846–59.)

In August 2016, Rabdeau reported that her headaches had become more severe due to increased stress. (*Id.* at 863.) Dr. Schloemer administered another Botox injection in November 2016 and noted that Rabdeau's headaches "continue to be well controlled on botox" and that Rabdeau reported feeling well overall despite the continued impacts of stress. (*Id.* at 867.) Rabdeau reported worsening headaches due to significant family stressors in January 2017 (*id.* at 871), but Dr. Schloemer noted that her headaches were overall still "well controlled" with Botox (*id.* at 1613, 1618).

During her October 2017 appointment, Rabdeau reported that her headaches had increased in frequency and that she wished to be more aggressive about her headache control. (*Id.* at 1623.) Dr. Schloemer then administered a Botox injection and decided to "[i]ncrease topirmate to 100mg and change to ER formulation (Trokendi)." (*Id.* at 1625.) At her December 2017 follow up visit, Rabdeau reported that her headaches had been more severe that week and that she continued to have about "1-2 severe migraines every other week." (*Id.* at 1631.)

In May 2018, Rabdeau requested an emergency appointment with Dr. Schloemer who noted that Rabdeau's headaches had worsened and that she was now experiencing more occipital pain and neck pain. (*Id.* at 1642.) Dr. Schloemer administered a 30mg IM Toradol

5

injection, provided a five-day Decadron course, and referred Rabdeau for a brain and spinal MRI to "rule out secondary cause for change in headache characteristics" and for six weeks of sphenopalatine ganglion (SPG) blocks. (*Id.*) Rabdeau presented at her follow up appointment later that month "doing horrible" and reporting that the recommended treatment did not alleviate her headaches. (*Id.* at 1657.) Dr. Schloemer also noted that Rabdeau's "MRI C spine showed slight increase in cervical [degenerative joint disease]." (*Id.*)

## LEGAL STANDARD

Under 42 U.S.C. § 405(g), this Court has "the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." However, the Court's task is limited to determining whether the factual findings are support by substantial evidence, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005); *see also Schaaf v. Astrue*, 602 F.3d 869, 874 (7th Cir. 2010) (finding that substantial evidence need not be conclusive evidence). "To determine whether substantial evidence exists, the court reviews the record as a whole but does not attempt to substitute its judgment for the ALJ's by reweighing the evidence, resolving material conflicts, or reconsidering facts or the credibility of witnesses." *Beardsley v. Colvin*, 758 F.3d 834, 836-37 (7th Cir. 2014). "While this review is deferential, 'it is not intended to be a rubber-stamp' on the ALJ's decision." *Brandon D. B. v. Kijakazi*, No. 19 C 5896, 2022 WL 2657192, at *2 (N.D. Ill. July 8, 2022) (quoting Stephens v. Berryhill, 888 F.3d 323, 327 (7th Cir. 2018)). The Court will reverse the Commissioner's final decision if it is not supported by substantial evidence. 42 U.S.C. § 405(g); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). The Court may also reverse the decision if the ALJ commits

6

legal error by failing to follow the SSA's rulings and regulations. *Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006).

While the ALJ is not required to discuss every piece of evidence in a decision, the ALJ does have an obligation to "build an accurate and logical bridge" between the evidence and their conclusions. *Jelinek*, 662 F.3d at 811; *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000). In analyzing the evidence, the ALJ must provide "enough detail and clarity to permit meaningful appellate review." *Scrogham v. Colvin*, 765 F.3d 685, 695 (7th Cir. 2014).

## ANALYSIS

Rabdeau advances two arguments for remand: (1) ALJ Freyberg's departure from ALJ Gendreau's finding of one migraine-related absence per month was legal error and/or not supported by substantial evidence and (2) ALJ Freyberg's omission of a limitation on migraine-related absences was not supported by substantial evidence. (Pl. Br., Docket # 16.) I will address each argument in turn.

 1. *Departure from Previous Migraine-Related Absence Finding*

     1.1    Res Judicata

Rabdeau first asserts that ALJ Freyberg's departure from ALJ Gendreau's finding of one migraine-related absence per month violates administrative res judicata. (Pl. Br. at 9.) As support for her argument, Rabdeau cites to *Schwabe v. Barnhart*, 338 F. Supp. 2d 941 (E.D. Wis. 2004), in which the court remanded the matter because the ALJ violated res judicata by failing to "include decisional language explaining which findings from the prior decision remain binding and which do not" and to "explain how any possible change in plaintiff's condition from the time of the first decision to the end of plaintiff's insured status impacted upon his decision." *Id.* at 961.

The Commissioner argues that "the prior decisions rendered by ALJ Gendreau were not final decisions with respect to the relevant period." (Comm'r Br. at 17–18.) The Commissioner further argues that "[t]he Appeals Council did not adopt any of the findings of the prior non-final ALJ decisions regarding this period of time, and therefore the ALJ was not bound in any way by those findings on remand." (*Id.*)

"The doctrine of res judicata applies in social security proceedings." *Louis-Brux v. Berryhill*, No. 18-CV-826, 2019 WL 1508977, at *2 (E.D. Wis. Apr. 5, 2019) (citing *Schwabe*, 338 F. Supp. 2d at 961); *see also* 42 U.S.C. §§ 405(g)–(h). "An earlier administrative decision at any level in the adjudicative process may be final and therefore properly treated as preclusive of a subsequent claim either because the decision has been judicially affirmed or because administrative reconsideration, hearing, or review, or judicial review has not been timely sought." *McGowen v. Harris*, 666 F.2d 60, 65 (4th Cir. 1981).

Here, ALJ Gendreau's December 2019 decision regarding whether Rabdeau was disabled during the period prior to May 9, 2018 does not constitute a final decision. The Appeals Council vacated ALJ Gendreau's decision with respect to the relevant period and remanded the case to ALJ Freyberg to issue a new decision. (Tr. 2653–55.) In fact, the Appeals Council specifically tasked ALJ Freyberg with reconsidering Rabdeau's subjective complaints regarding her migraine disorder. (*Id.* at 2653–54.) Rabdeau argues that the Appeals Council did not remand her case "so that a new ALJ could pick an even lower number than the once-per-month finding" regarding migraines. (Pl.'s Br. at 11–12.) That is inaccurate. What the Appeals Council ordered was for the ALJ to reconsider the evidence regarding Rabdeau's headache symptoms during the relevant period and, if the ALJ found that Rabdeau's subjective symptoms were inconsistent with the record evidence, to better explain how. (Tr. 2653–54.) The Appeals Council made no finding on the merits of Rabdeau's

8

subjective complaints. In other words, ALJ Freyberg was free to "pick an even lower number," so long as the decision explained why the record evidence was inconsistent with her subjective complaints. Thus, ALJ Freyberg was not required to adopt ALJ Gendreau's findings with respect to the relevant period.

       1.2       Substantial Evidence

Rabdeau next asserts that even if ALJ Freyberg's decision did not violate res judicata, his "bait and switch approach" violated "principles of finality and fundamental fairness" and rendered the decision unsupported by substantial evidence. (Pl. Br. at 12 (citing *Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 477–78 (4th Cir. 1999) (holding that the judicial ratification of the SSA's "bait-and-switch" approach in which the second ALJ strayed from the first ALJ's RFC determination produced an unjust and fundamentally unfair result).) More specifically, Rabdeau argues that because ALJs Gendreau and Freyberg reviewed the same evidence regarding the relevant time period, ALJ Gendreau's migraine-related absence finding "constituted an 'important and probative fact' that presumptively bars ALJ Freyberg from supporting a contrary finding with substantial evidence." (*Id.* at 14 (quoting *Albright*, 174 F.3d at 477–78).) Rabdeau also asserts that ALJ Freyberg erred by deviating from ALJ Gendreau's finding without even acknowledging that he was doing so. (*Id.* at 14–15.)

The Commissioner avers that Rabdeau's disagreement with ALJ Freyberg's conclusions does not render those conclusions fundamentally unfair. (Comm'r Br. at 17–18.) The Commissioner also avers that SSA regulations permit ALJs to take any additional action that is not inconsistent with the Appeals Council's remand order. (*Id.* (citing 20 C.F.R. § 404.977(b)).)

When the Appeals Council remands a case to an ALJ, the ALJ "*shall* take any action that is ordered by the Appeals Council and *may* take any additional action that is not inconsistent with the Appeals Council's remand order." 20 C.F.R. § 404.977(b) (emphasis added). In this case, the remand order expressly vacated the ALJ's prior decision with respect to the period prior to May 9, 2018 and instructed the ALJ to "[f]urther evaluate the claimant's subjective complaints, including from her migraine disorder," "[g]ive further consideration to the claimant's maximum residual functional capacity," and "issue a new decision." (Tr. 2653–55.) Therefore, once again, ALJ Freyberg was permitted on remand to review the record and modify ALJ Gendreau's previous findings in accordance with the Appeals Council's remand order. *See Johnson v. Kijakazi*, No. 20-CV-1159-SCD, 2021 WL 3885535, at *4 (E.D. Wis. Aug. 31, 2021).

Rabdeau also argues that ALJ Freyberg did not provide substantial evidence to support his deviation from ALJ Gendreau's finding of one migraine-related absence per month and that such a "bait and switch approach" violated "principles of finality and fundamental fairness." (Pl. Br. at 12.) I disagree.

ALJ Freyberg noted that "the objective neurological findings during the period December 2014 to August 2015 were consistently described as normal" and that Dr. Schloemer's treatment notes from September 2015 indicated that Rabdeau "continues to have only 2 mild headaches a week that are short lived and do not require acute therapy – she is very happy with the treatment plan." (Tr. 2522–23.) "Dr. Schloemer noted in December 2015, and May, August, and November 2016 that the claimant was taking Botox and 'continues to do well,' or was 'doing very well,' or 'headaches well-controlled,' in no acute distress and with normal neurologic findings (again, these are less detailed findings)." (*Id.* at 2524.) ALJ Freyberg also noted that Rabdeau reported worsening headaches to Dr. Schloemer in January

10

and July 2017 but that Rabdeau's headaches continued to be "well controlled" and her neurological exam findings continued to be "unremarkable." (*Id.* at 2524.) Finally, ALJ Freyberg noted that Rabdeau reported about 1-2 migraines every other week in December 2017. (*Id.* at 2425.) In March 2018, Rabdeau reported that her headaches were "severe" but still well-controlled with Botox injections. (*Id.*)

ALJ Freyberg ultimately determined that the record "supports the conclusion that the claimant's migraines came to be largely well-controlled with use of Botox, and the claimant retained significant functional capacity." (*Id.* at 2524.) ALJ Freyberg acknowledged that while Rabdeau's migraine "symptoms may wax and wane over a relatively lengthy period at issue," "their severity does not appear to have been disabling (whether by way of absenteeism or otherwise) during the period addressed by this decision." (*Id.* at 2525.) ALJ Freyberg also noted that Rabdeau's activities of daily living—providing care for her disabled boyfriend and two disabled children; taking the children to school; picking up the house; making supper; cleaning up; caring for two dogs, one hamster, and a fish; shopping 1-2 times biweekly for 2-3 hours; and engaging in hobbies that include reading and puzzles—were "inconsistent with her allegations of disabling migraines during the period under review." (*Id.* at 2524–25.)

I find that ALJ Freyberg's discussion constitutes substantial evidence to support his departure from ALJ Gendreau's migraine-related absence finding. Thus, remand is not warranted on this ground.

2. *Omission of a Migraine-Related Absences Limitation*

Rabdeau next asserts that ALJ Freyberg cherry-picked the record and erred in his decision by failing to: (1) "place ambiguous references [to] 'significant improvement' and 'well-controlled' migraines in context"; (2) "grapple with evidence showing that Ms. Rabdeau's migraines continued even after beginning Botox treatments"; (3) "explain how the

11

numerous clinical findings ALJ Freyberg cites show that Ms. Rabdeau will never miss work due to migraine headaches"; (4) "explain how Ms. Rabdeau's reported activities show that she will never miss work due to migraines"; and (5) "address absences related to Ms. Rabdeau's need for frequent medical treatment." (Pl. Br. at 16–26.)

The Commissioner avers that "[i]n light of the relatively unremarkable objective evidence, the fact that treatment provided good control of Plaintiff's migraine headaches for years, and other factors, the ALJ properly rejected Plaintiff's allegations and assessed a reasonable RFC supported by substantial evidence." (Comm'r Br. at 7.) The Commissioner further avers that many of Rabdeau's arguments require the Court to improperly "reweigh evidence and replace the ALJ's reasoning with its own." (*Id.* at 8.) Finally, the Commissioner argues that the ALJ did not commit "remandable error" in evaluating Rabdeau's activities of daily living or in evaluating the frequency of Rabdeau's medical treatment. (*Id.* at 12–13.)

### 2.1 References to "Significant Improvement" and "Well Controlled"

Rabdeau first asserts that "ALJ Freyberg cherry-picks the record by failing to place ambiguous references to 'significant improvement' and 'well-controlled' migraines in context." (Pl.'s Br. at 16.)

Migraines are one of the more challenging impairments for ALJs to address because "determining the nature and extent of a claimant's impairment rests heavily on an assessment of the claimant's subjective symptoms, including how her symptoms respond to treatment," rather than objective measures. *Gould v. Kijakazi*, No. 21-CV-308, 2022 U.S. Dist. LEXIS 31435, at *7 (E.D. Wis. Feb. 23, 2022); *see also Moon v. Colvin*, 763 F.3d 718, 722 (7th Cir. 2014) (noting that imaging is generally useful only to rule out certain possible causes of migraines); *Overton v. Saul*, 802 F. App'x 190, 192 (7th Cir. 2020) ("And there is no objective measure for migraine symptoms, so the ALJ could only determine the limiting effects of

12

Overton's migraines by assessing her credibility.") (internal citations omitted); SSR 19-4p, § 2. However, ALJs still have an "obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding." *See Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010).

Here, ALJ Freyberg considered Dr. Schloemer's recurring notes that Rabdeau's migraines were "well controlled" with Botox injections as well as objective neurological examination findings and Rabdeau's consistent denial that she was experiencing debilitating symptoms from her migraines such as "diplopia, dizziness, hearing loss, gait disturbances, incontinence, incoordination, involuntary movements, hearing loss, loss of consciousness, memory loss, seizures, tinnitus or visual loss." (Tr. 2523–25.) ALJ Freyberg also considered Dr. Schloemer's notes that although Rabdeau continued to experience migraines, the frequency and severity of those migraines "significantly improved" with treatment. (*Id.*)

I find that ALJ Freyberg's evaluation of the record evidence adequately places Rabdeau's migraine improvements in context and does not constitute improper cherry-picking. As such, remand is not warranted on this ground.

2.2    Evidence that Rabdeau's Migraines Continued After Treatment

Rabdeau next asserts that "ALJ Freyberg cherry-picked Dr. Schloemer's treatment notes and failed to grapple with evidence showing that Ms. Rabdeau's migraines continued even after beginning Botox treatments." (Pl. Br. at 17.)

But "[t]his is not a case where the ALJ referenced single instances of normalcy and ignoring Plaintiff's difficult dates*." Robert B. v. Comm'r of Soc. Sec.*, No. 21-cv-1352-DWD, 2023 U.S. Dist. LEXIS 53121, at *26 (S.D. Ill. Mar. 28, 2023). Instead, ALJ Freyberg adequately detailed Rabdeau's migraine treatment throughout the relevant period, noting that

13

while Rabdeau continued to have migraines, Dr. Schloemer consistently reported that Rabdeau's migraines generally declined in severity and became manageable with treatment and Rabdeau consistently denied experiencing disabling migraine symptoms. (Tr. 2523–25.) Moreover, "[m]edical improvement' is not synonymous with full recovery," *Maudlin v. Astrue*, No. 1:14-cv-256, 2015 U.S. Dist. LEXIS 119291, at *14 (S.D. Ohio Sep. 8, 2015), so the fact that Rabdeau continues to suffer from migraines does not disprove that medical improvement occurred during the relevant period, *Elizabeth A. v. Saul*, No. 19 C 6024, 2021 U.S. Dist. LEXIS 8348, at *19 (N.D. Ill. Jan. 15, 2021).

Thus, I find that ALJ Freyberg sufficiently grappled with record evidence that Rabdeau continued to experience migraines even with treatment and that his finding that the severity of Rabdeau's migraines was not disabling was supported by substantial evidence. Remand is not warranted on this ground.

### 2.3 Objective Evidence Supporting Migraine-Related Absence Finding

Third, Rabdeau asserts that "[t]he decision fails to explain how the numerous clinical findings ALJ Freyberg cites show that Ms. Rabdeau will never miss work due to migraine headaches." (Pl. Br. at 19.) While the ALJ is not required to discuss every piece of evidence in a decision, the ALJ must "build an accurate and logical bridge" between the evidence and their conclusions. *Jelinek*, 662 F.3d at 811; *Clifford*, 227 F.3d at 872.

ALJ Freyberg's discussion of Rabdeau's migraine evidence for purposes of his RFC determination included numerous statements that her neurological testing was normal. For example:

- Significantly, the objective neurological findings during the period December 2014 to August 2015 were consistently described as normal, including: no acute distress; mental status examinations (alert and oriented, attentive, normal concentration, memory, and speech, with

14

- appropriate fund of knowledge); motor (fine finger movements, muscle tone and strength, no abnormal movements, normal power); intact sensory to light touch; physiologic gait; intact finger-to-nose coordination bilaterally; and cranial nerves (including pupils reactive to light). At no examination was objective sensitivity to light or sound noted by the provider. (For example, Ex. 8F 2, 7, 17, 21, 26, 30, 34).

- Again, Dr. Schloemer found the claimant had no visual abnormalities, with intact facial sensation and hearing, and no cranial/facial weakness. Dr. Schloemer reported that the claimant's fine finger movements were intact, with no fix or drift, with normal muscle tone and bulk, no sign of abnormal involuntary movements, and normal muscle strength (Ex.8F/22).

- The claimant was observed to be in no acute distress and (somewhat limited) objective neurological findings are reported to be normal (Ex.13F/59-60).

- In January 2017, Dr. Schloemer noted the claimant reported a recent worsening of her headaches due to significant family stressors, but presented no other complaints and was ass[ess]ed as in no acute distress with physiologic gait and normal mental status examination (Ex.13F/78-80).

- During a different medical examination in June 2017, the claimant reported no symptoms of headache, earache, hearing loss, tinnitus, as well as no dizziness, lightheadedness, or syncope; neurological and psychological observations were within normal limits (Ex.16F/8).

(Tr. 2523–24.)

ALJ Freyberg did not solely rely on Rabdeau's normal neurological examinations to undermine her alleged migraine symptoms. Rather, ALJ Freyberg also noted Rabdeau's consistent reports to providers denying that she was experiencing debilitating symptoms from her migraines (*id.* at 2523) and cited Rabdeau's daily activities as evidence that her allegations of disabling migraine symptoms were not persuasive (*id.* at 2525). *See Wessel v. Colvin*, No. 4:14-cv-00055-SEB-DML, 2015 U.S. Dist. LEXIS 112281, at *17 (S.D. Ind. Aug. 4, 2015) ("The court does not suggest the ALJ is required to believe [the claimant] about their

frequency and effects, but he must tackle the issue directly and provide his reasons, without the near-exclusive reliance on the lack of supporting neurologic tests and scans.").

Because ALJ Freyberg provided support beyond the neurological examination results for his finding that Rabdeau's migraines "came to be largely well-controlled with use of Botox" and that she retained enough "functional capacity" to negate any need for a migraine-related absence limitation (Tr. 2524), I find that ALJ Freyberg's discussion did create a "logical bridge" between the record evidence and his conclusions. Remand is not warranted on this ground.

### 2.4 Activities of Daily Living

Fourth, Rabdeau asserts that "ALJ Freyberg fails to explain how Ms. Rabdeau's reported activities show that she will never miss work due to migraines." (Pl. Br. at 21.)

"In evaluating a claimant's subjective symptom allegations, an ALJ assesses the objective medical evidence and several other factors, including the claimant's daily activities, effectiveness and side effects of any medication, treatment, other methods to alleviate symptoms, and factors that precipitate and aggravate pain." *Angie S. v. Kijakazi*, No. 21 C 5978, 2022 U.S. Dist. LEXIS 210429, at *22 (N.D. Ill. Nov. 21, 2022) (citing SSR 16-3p). "Although it is appropriate for an ALJ to consider a claimant's daily activities when evaluating their credibility, this must be done with care." *Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013). On that basis, the Seventh Circuit has "repeatedly cautioned that a person's ability to perform daily activities, especially if that can be done only with significant limitations, does not necessarily translate into an ability to work full-time." *Id.*; *see also Jeske v. Saul*, 955 F.3d 583, 592 (7th Cir. 2020); *Alvarado v. Colvin*, 836 F.3d 744, 750 (7th Cir. 2016); *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012); *Punzio v. Astrue*, 630 F.3d 704, 712 (7th Cir. 2011); *Gentle v. Barnhart*, 430 F.3d 865, 867–68 (7th Cir. 2005); *Hawkins v. First Union*

16

*Corp. Long-Term Disability Plan*, 326 F.3d 914, 918 (7th Cir. 2003). Furthermore, "[a]n ALJ's assessment of a claimant's daily activities should take into account how her activities may vary between her good days and her bad days." *Gould v. Kijakazi*, No. 21-CV-308, 2022 U.S. Dist. LEXIS 31435, at *7–8 (E.D. Wis. Feb. 23, 2022).

Here, ALJ Freyberg observed that Rabdeau "indicated that she provided care for her disabled boyfriend and two disabled children," including "such things as taking the children to school, picking up the house, make supper, clean up, and care for two dogs, one hamster, and a fish, shopping 1-2 times biweekly for 2-3 hours, with hobbies that include reading and puzzles." (Tr. 2525.) ALJ Freyberg also observed that while Rabdeau at times "qualified or minimized her activities," she also "indicated that she was doing most of the work." (*Id.*) ALJ Freyberg thus concluded that "[c]onsidering the record as a whole, and allowing for the fact that symptoms may wax and wane over a relatively lengthy period at issue, the claimant's assertions of disabling symptoms from migraines are not persuasive." (*Id.*)

While ALJ Freyberg could have more thoroughly accounted for the variable nature of Rabdeau's symptoms, *see Gould*, 2022 U.S. Dist. LEXIS 31435, at *11 (finding that the ALJ's assessment of the claimant's daily activities "did not appear to take into account the variable nature of her symptoms"), ALJ Freyberg's discussion of the inconsistencies between Rabdeau's activities of daily living and subjective allegations of more severe limitations was not so "patently wrong" as to warrant remand, *see Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014) ("[W]e will only overturn the ALJ's credibility determination if it is patently wrong, which means that the decision lacks any explanation or support."). ALJ Freyberg did acknowledge the qualified manner in which Rabdeau at times performed her daily activities, and there is no indication that ALJ Freyberg equated Rabdeau's activities of daily living with

full-time work or placed any undue emphasis on them. *See David W. v. Kijakazi*, No. 3:22-cv-00033-RLY-MPB, 2023 U.S. Dist. LEXIS 52889, at *20 (S.D. Ind. Feb. 21, 2023) (finding that ALJ's evaluation of the claimant's activities of daily living was not patently wrong because the ALJ addressed variations in activities due to pain level and did not equate activities to full-time work or place undue emphasis on them). Moreover, Rabdeau's activities of daily living are but one factor under SSR 16-3p, and ALJ Freyberg provided substantial evidence to support his conclusion that Rabdeau's subjective allegations were inconsistent with her record as a whole. *See Schmidt v. Kijakazi*, No. 20-C-953, 2021 U.S. Dist. LEXIS 184002, at *28 (E.D. Wis. Sep. 27, 2021) ("The fact that reasonable factfinders may reach different conclusions is not a reason to overturn the ALJ's credibility determination. It is not the reviewing court's role to reweigh the evidence."); *Halsell v. Astrue*, 357 F. App'x 717, 722 (7th Cir. 2009) ("Not all of the ALJ's reasons must be valid as long as enough of them are."). Accordingly, the ALJ's evaluation of Rabdeau's activities of daily living does not constitute error meriting remand.

### 2.5 Absences for Medical Treatment

Finally, Rabdeau asserts that "ALJ Freyberg fails to address absences related to Ms. Rabdeau's need for frequent medical treatment." (Pl. Br. at 24.) Rabdeau proclaims that she attends an average of three to four appointments per month each lasting under two hours and that such a frequency of appointments would be work-preclusive. (*Id.* at 24–25.) However, the record suggests that Rabdeau's medical visits are generally scheduled in advance, and Rabdeau points to no evidence demonstrating that her treatment appointments must occur during work hours and cannot be arranged around a traditional work schedule. *Anwan L. v. Comm'r of Soc. Sec.*, No. 21-1397 (SDW), 2022 U.S. Dist. LEXIS 117632, at *25 (D.N.J. July

18

5, 2022); *Chestine G. v. Saul*, No. 18 C 4980, 2020 U.S. Dist. LEXIS 40998, at *35-36 (N.D. Ill. Mar. 10, 2020). Because the ALJ's decision not to address absences related to medical appointments was supported by substantial evidence, I find that he did not commit remandable error.

## CONCLUSION

Rabdeau asserts two grounds supporting remand. First, Rabdeau asserts that ALJ Freyberg's departure from ALJ Gendreau's finding of one migraine-related absence per month was legal error and/or not supported by substantial evidence. However, I find that ALJ Freyberg was not required under res judicata to adopt ALJ Gendreau's findings with respect to the relevant period and that ALJ Freyberg's discussion provides substantial evidence to support his departure from ALJ Gendreau's finding of one migraine-related absence per month.

Second, Rabdeau asserts that ALJ Freyberg's omission of a limitation on migraine-related absences was not supported by substantial evidence. Because ALJ Freyberg cited specific reasons from the record for diverging from ALJ Gendreau's migraine-related absence finding and for discounting Rabdeau's reports of disabling migraine symptoms, I find that ALJ Freyberg did not commit remandable error.

For these reasons, the Commissioner's decision is affirmed, and the case is dismissed.

**ORDER**

**NOW, THEREFORE, IT IS ORDERED** that the Commissioner's decision is **AFFIRMED**.

**IT IS FURTHER ORDERED** that this action is **DISMISSED**. The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 1st day of September, 2023.

BY THE COURT:

_____
NANCY JOSEPH
United States Magistrate Judge